## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Roderick Lyke, (#M-30564),     )
                                 )
          Plaintiff,    )
                                 )     Case No. 21 C 50066
          v.             )
                                 )     Hon. Iain D. Johnston
Dixon Correctional Center,    )
                                 )
          Defendant.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Roderick Lyke, formerly a prisoner at Dixon Correctional Center, brought this *pro se* civil rights complaint, 42 U.S.C. § 1983, alleging deliberate indifference to a serious medical condition while he was housed at Dixon. Defendants Drs Nancy Lank and Merrill Zahtz, and State Defendant Varga move for summary judgment (Doc. 46), arguing that Plaintiff failed to exhaust his administrative remedies before filing suit, as required under the PLRA.[1]  For the following reasons, the motion is denied.

## BACKGROUND

### I.   Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted.) Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local

---

[1] Defendant Varga moved to join in the motion for summary judgment filed by Defendants Lank and Zahtz (Doc. 53) and leave was granted on February 4, 2022 (Doc. 54.)

Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Doc. 55.) Plaintiff responded to Defendants' statements of fact in his Motion for Opposing Summary Judgment, largely declining to dispute them. (Doc. 64.) However, for any statement of fact Plaintiff did attempt to dispute, he did not cite to the record. The Court therefore accepts as true Defendants' Statement of Facts to the extent it is supported by the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Nonetheless, although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the record evidence, including Plaintiff's grievances, to determine whether there is a disputed issue of material fact. *See Bentz v. Hardy*, 638 F. App'x. 535, 536 (7th Cir. 2016) (unpublished). The Court also is mindful that failure to comply with Local Rule 56.1 does not automatically warrant judgment in favor of the moving

party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (moving party has "ultimate burden of persuasion" to show entitlement to judgment as a matter of law). The Court will apply these standards in evaluating the evidence.

## II.    Relevant Facts

Plaintiff, Rodrick Lyke, was, during the relevant time-period described in the complaint, an inmate in the custody of the Illinois Department of Corrections. (Def. SOF, Dkt. 48, ¶ 1.) Defendant, Dr. Nancy Lank, was previously employed by Wexford Health Sources, Inc. as a Site Physician at Dixon Correctional Center. (*Id*. at ¶ 2.) Defendant, Dr. Merrill Zahtz, is employed by Wexford Health Sources, Inc. as its Medical Director at the Dixon Correctional Center. (*Id*. at ¶ 3.) Defendant John Varga was the warden of Dixon Correctional Center during the relevant time-period described in the complaint. (Dkt. 53, ¶ 1.)

On April 5, 2019, Plaintiff filed an emergency grievance complaining that he had previously undergone surgery on his broken hand and wanted to be returned to Stroger Hospital for a follow-up. (Def. SOF, Dkt. 48, ¶ 10.) On May 7, 2019, Plaintiff's April 5, 2019, grievance was deemed to not be an emergency. (*Id*. at ¶ 12.) The grievance was returned to Plaintiff with instructions to resubmit his April 5, 2019, grievance in the normal manner. (*Id*.) However, Plaintiff abandoned his April 5, 2019, and did not obtain a grievance officer's response nor a response from the ARB. (*Id*. at ¶ 13.)

On or about May 6, 2019, Plaintiff filed another emergency grievance regarding his hand and his demand to be returned to Stroger Hospital. (*Id*. at ¶ 14.) On or about May 8, 2019, Plaintiff's May 6, 2019, grievance was determined to be a non-emergency and was returned to Plaintiff with instructions to resubmit his grievance in the normal manner. (*Id*. at ¶ 16.) However,

3

Plaintiff abandoned his May 6, 2019, grievance and did not resubmit it to his counselor, did not

obtain a grievance officer's response, and did not forward it to the ARB. (*Id*. at ¶ 17.)

On or about May 8, 2019, Plaintiff submitted another emergency grievance again

requesting to be returned to Stroger Hospital for a follow-up on his hand. (*Id*. at ¶ 18.) On or

about May 13, 2019, Plaintiff's May 8, 2019, grievance was determined to not be an emergency

and was returned to him to with instructions to resubmit his grievance in the normal manner. (*Id*.

at ¶ 20.) On or about June 4, 2019, Plaintiff's counselor responded to Plaintiff's May 8, 2019,

grievance and noted that he had been sent on a medical furlough on June 3, 2019. (*Id*. at ¶ 28.)

Plaintiff then abandoned his May 8, 2019, grievance and did not obtain a grievance officer's

response, nor did he send this grievance to the ARB. (*Id*. at ¶ 29.)

On or about May 20, 2019, Plaintiff submitted a non-emergency grievance again requesting

to be returned to Stroger Hospital for a follow-up on his hand. (*Id*. at ¶ 21.) On or about June 4,

2019, Plaintiff's counselor responded to Plaintiff's May 20, 2019, grievance and noted that he had

been sent on a medical furlough on June 3, 2019. (*Id*. at ¶ 30.) Plaintiff then abandoned his May

20, 2019, grievance and did not obtain a grievance officer's response, the CAO's response, nor did

he send this grievance to the ARB. (*Id*. at ¶ 31.)

On or about May 25, 2019, Plaintiff submitted a non-emergency grievance demanding to

be returned to Stroger Hospital. (*Id*. at ¶ 23.) However, Plaintiff abandoned his May 25, 2019,

grievance and never received a counselor's response, a grievance officer's response, a CAO's

response, nor a response from the ARB. (*Id*. at ¶ 24.)

On or about May 29, 2019, Plaintiff submitted a non-emergency grievance demanding

stronger pain medications for his hand and to be returned to Stroger Hospital for a follow-up on

his hand. (*Id*. at ¶ 26.) Plaintiff abandoned his May 29, 2019, grievance and did not obtain a

counselor's response, a grievance officer's response, the CAO's response, nor a response from the ARB. (*Id*. at ¶ 27.)

On or about July 8, 2019, Plaintiff submitted a non-emergency grievance demanding to be provided physical therapy and pain medications for his hand. (*Id*. at ¶ 32.) On or about September 25, 2019, Plaintiff's counselor responded to the July 8, 2019, grievance noting that the health care unit administration had not yet responded to the grievance. (*Id*. at ¶ 34.) Plaintiff was then instructed to submit his grievance to the second level of review—to the prison grievance officer. (*Id*.) Plaintiff then abandoned his July 8, 2019, grievance and did not obtain the grievance officer's response, the CAO's response, nor did he send this grievance to the ARB. (*Id*. at ¶ 35.)

On or about March 19, 2020, Plaintiff filed a non-emergency grievance (#1649) with the Dixon Correctional Center regarding his medical treatment for his hand. (*Id*. at ¶ 36.) On June 30, 2020, Plaintiff's counselor responded to the March 19, 2020, grievance and noted that Plaintiff was in physical therapy and was instructed to sign up for sick call regarding his medical concerns. (*Id*. at ¶ 42.) On or about September 29, 2020, Dixon's Grievance Officer responded to Plaintiff's March 19, 2020, grievance and noted that he was in physical therapy and instructed him to sign up for sick call if he had any issues. (*Id*. at ¶ 47.) On or about September 30, 2020, Dixon's Chief Administrative Officer, or designee, concurred with the Grievance Officer's response to the March 19, 2020, grievance. (*Id*. at ¶ 48.) On or about October 30, 2020, the ARB received Plaintiff's March 19, 2020, grievance. (*Id*. at ¶ 52.) On or about March 29, 2021, Plaintiff's ARB Chairperson at the time, Ann Lehr, responded to Plaintiff's March 19, 2020, grievance (#1649) and noted that Plaintiff was receiving already receiving physical therapy, prednisone, and a wrist splint. (*Id*. at ¶ 58.)

On or about June 8, 2020, Plaintiff filed a non-emergency grievance with the Dixon Correctional Center requesting a response to a March 19, 2020, grievance he had submitted. (*Id*. at ¶ 37.) On or about June 10, 2020, Plaintiff's counselor responded and noted that his June 8, 2020, grievance did not present a grievable matter, and that his March 19, 2020, grievance was still awaiting a response from Dixon's healthcare unit. (*Id*. at ¶ 38.) On or about June 12, 2020, Plaintiff's grievance officer responded to the June 8, 2020, grievance, noting that the submission failed to meet Department Rule 504F for a number of reasons, including: a failure to include relevant dates within 60 days before the filing of the grievance; a failure to have his counselor address the issue; and a failure by Plaintiff to include descriptive information about who he believes was responsible for the handling of his grievances. (*Id*. at ¶ 39.) On or about September 21, 2020, the Dixon Correctional Center's Chief Administrative Officer, or designee, concurred with the grievance officer's response to Plaintiff's June 8, 2020, grievance. (*Id*. at ¶ 46.) On or about October 30, 2020, the ARB received Plaintiff's June 8, 2020, grievance. (*Id*. at ¶ 53.) On November 6, 2020, Plaintiff's ARB Chairperson at the time, Sarah Johnson, responded to Plaintiff's June 8, 2020, grievance and noted that his March 19, 2020, grievance (grievance #1649) was pending with the ARB at that time and rejected it as untimely under Department Rule 504, as it contained no dates of any occurrences within 60 days prior to the filing of the grievance. (*Id*. at ¶ 54.)

On or about June 22, 2020, Plaintiff filed a non-emergency grievance directly with the ARB concerning treatment for his hand. (*Id*. at ¶ 40.) On or about July 1, 2020, the ARB received Plaintiff's June 22, 2020, grievance. (*Id*. at ¶ 43.) On July 30, 2020, Plaintiff's ARB Chairperson at the time, Sarah Johnson, responded to Plaintiff's June 22, 2020, grievance and rejected it as untimely under Department Rule 504. (*Id*. at ¶ 45.) None of the dates included in Plaintiff's June

22, 2020, grievance were within 60 days prior to filing his grievance, as required by 20 Ill. Admin. Code 504.810(c). Further, there was no basis for considering an exception to the 60-day rule. Additionally, Plaintiff failed to first obtain his counselor's response, his grievance officer's response, and the Chief Administrative Officer's response before submitting his grievance to the ARB. (*Id*.)

On or about June 22, 2020, Plaintiff filed the same non-emergency grievance with his counselor at the Dixon Correctional Center regarding his medical treatment for his hand. (*Id*. at ¶ 41.) On or about July 6, 2020, Plaintiff's counselor responded to his June 22, 2020, grievance, marked as grievance #3540. Plaintiff was instructed to submit a sick call request for further treatment of his hand. (*Id*. at ¶ 44.) On or about October 2, 2020, the Dixon Correctional Center's grievance officer responded to Plaintiff's June 22, 2020, grievance and noted that Plaintiff's grievance was a duplicate of other grievances that had been finalized at the institutional level in the weeks prior. (*Id*. at ¶ 49.) Further, the prison grievance officer noted that Plaintiff's June 22, 2020, grievance contained no new relevant information and was therefore not in compliance with Department Rule 504.830. (*Id*.) On or about October 2, 2020, the Dixon Correctional Center's Chief Administrative Officer, or designee, concurred with the grievance officer's response to Plaintiff's June 22, 2020, grievance. (*Id*. at ¶ 50.) On or about October 7, 2020, Plaintiff forward his June 22, 2020, to the ARB. (*Id*. at ¶ 51.) On or about October 30, 2020, the ARB received Plaintiff's June 22, 2020, grievance. (*Id*.) On November 6, 2020, Plaintiff's ARB Chairperson at the time, Sarah Johnson, responded to Plaintiff's June 22, 2020, grievance and noted that it was untimely under Department Rule 504. (*Id*. at ¶ 55.) None of the dates included in Plaintiff's June 22, 2020, grievance were within 60 days before filing his grievance, as required by 20 Ill. Admin. Code 504.810(c). (*Id*.) Further, there was no basis for considering an exception to the 60-day rule.

Ms. Johnson also noted that Plaintiff had another grievance pending on the same issue, grievance #1649. (*Id*.)

Plaintiff filed this lawsuit on February 11, 2021, and filed an amended complaint on March 22, 2021. (*Id*. at ¶¶ 56 and 57.) None of Plaintiff's 2019, grievances mention Dr. Lank nor Dr. Zahtz by name. (*Id*. at ¶¶ 11, 15, 19, 22, 25, 33.)

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact is not demonstrated by "the mere existence of *some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992). A genuine issue of material facts exists when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty. Sch. Dist.*,

673 F.3d 746, 751 (7th Cir. 2012). Thus, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

When deciding a motion for summary judgment, the Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and draw all legitimate inferences in favor of that party. *Id.*

## II. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires an inmate who brings a civil rights complaint to first exhaust his administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *see, e.g.*, *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). This requirement is mandatory; "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The administrative process, which typically involves the filing of a grievance, is intended to allow correctional facilities "to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). This means that prisoners must "take advantage of all procedures that are

actually available." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020). Because failure to exhaust is an affirmative defense, the burden is on the defendant to demonstrate that the inmate failed to exhaust. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

Here, the grievance procedures in effect at the relevant time required inmates to file their grievances with the counselor within 60 days of the discovery of the problem or incident giving rise to the grievance. Ill. Admin. Code tit. 20, § 504.810(a). Grievances that cannot be resolved through routine channels are then sent to a Grievance Officer. Ill. Admin. Code tit. 20, § 504.820(a). The Grievance Officer then reviews the grievance and provides a written response to the prisoner. Ill. Admin. Code tit. 20, § 504.830(a). The Grievance Officer also reports his or her findings and recommendations to the CAO within two months after receipt of the grievance, when feasible under the circumstances. Ill. Admin. Code tit. 20, § 504.830(e). The CAO then reviews the findings and advises the prisoner of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he can appeal to the IDOC Director through the ARB within 30 days. Ill. Admin. Code tit. 20, § 504.850(a). The prisoner must attach copies of the Grievance Officer's report and the CAO's decision. *Id.* The ARB shall submit to the Director a written report of its findings and recommendations. Ill. Admin. Code tit. 20, § 504.850(d). The Director then reviews those findings and recommendations and makes a final determination as to the grievance within six months, when reasonably feasible. Ill. Admin. Code tit. 20, § 504.850(e). The prisoner is then to be sent a copy of the decision. *Id.*

The grievance procedures allow for the filing of emergency grievances, which are sent directly to the CAO. Ill. Admin. Code tit. 20, § 504.840. If the CAO determines that the grievance should not be handled on an emergency basis, the prisoner is to be notified in writing that he may resubmit the grievance in accordance with the standard grievance process. Ill. Admin. Code tit.

10

20, § 504.840(c); *see Williams*, 957 F.3d at 832 (observing that the administrative code was changed in 2017, making it clear that prisoners must resubmit grievances under the normal procedure if the warden declines to review it on an emergency basis).

In this case, Plaintiff filed multiple grievances in 2019, alleging that he was receiving inadequate medical treatment at Dixon Correctional Center for the injury to his hand.[2] Defendants assert in their Statement of Facts that as to each of these grievances, Plaintiff "abandoned" the process, failing to exhaust his administrative remedies. In his response, Plaintiff did not dispute any of these statements except to assert with regard to the first 2019, grievance, submitted on April 5, 2019. Plaintiff responded to statement of fact 13, stating that he continued to file grievances. While the record confirms Plaintiff's response to be true, it does not adequately dispute the statement of fact asserting that Plaintiff abandoned *this* grievance. Accordingly, the Court finds that with regard to all of the 2019, grievances, Plaintiff failed to properly exhaust his administrative remedies prior to filing suit.

Before proceeding to analyze the question of whether Plaintiff adequately exhausted his administrative remedies with respect to the grievances he filed in 2020, the Court pauses to address Defendants' argument that because Plaintiff did not specifically name Defendants Lank and Zahtz in his grievances he has failed to exhaust his administrative remedies. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 Ill. Admin Code § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013) (noting that district court granted summary judgment on grounds that plaintiff had not exhausted administrative remedies because

---

[2] Plaintiff filed grievances on April 5, 2019, May 6, 2019, May 8, 2019, May 20, 2019, May 25, 2019, May 29, 2019, and July 8, 2019.

his grievance did not mention defendants by name or inference); *but see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n. 1 (7th Cir. Feb. 6, 2014) (noting that granting of summary judgment for failure to name defendants in the grievance was error where the grievance form only asked for a brief summary of the grievance). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)(citing *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)).

Indeed, the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005)(*citing Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (*citing Jones*, 549 U.S. at 219. Thus, the Court finds that although Plaintiff may not have named the individual Defendants in his grievances, this fact alone does not justify entry of summary judgment in this case for failure to exhaust administrative remedies before filing suit, particularly when the failure to identify the individuals was not a basis for denying the grievance at the administrative level. *Maddox*, 665 F.3d at 721-22

Moving on to the grievances submitted by the Plaintiff in 2020, he submitted grievances on March 19, 2020, June 8, 2020, and two grievances on June 22, 2020 (one at the institutional level and one directly to the Administrative Review Board in Springfield (ARB)). In his March

19, 2020, grievance, Plaintiff specifically mentions Defendants Lank and Zahtz in reference to inadequate medical care at Dixon. Plaintiff's March 19, 2020, grievance was resolved by the ARB when it responded to Plaintiff on March 29, 2021, more than a year after he submitted the grievance to his counselor at Dixon. Plaintiff filed suit in this case on February 11, 2021, suggesting that he had not exhausted his administrative remedies before filing suit.

However, Plaintiff also submitted follow-up grievances on June 8, 2020, and June 22, 2020, seeking resolution of his March 19, 2020, grievance, and in both specifically referencing the underlying medical issues he had with regard to his injured hand. In both, he also specifically names Defendants Lank and Zahtz and describes his ongoing medical issues regarding treatment for his injured hand. The ARB resolved the June 8, 2020, and June 22, 2020, grievances on November 6, 2020, while waiting until March 29, 2021, to resolve the March 19, 2020, grievance, although all address Plaintiff's ongoing problems with medical care. The Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba*, 458 F.3d at 684 (*citing Woodford v. Ngo*, 548 U.S. at 93.

The Court finds that the June 8, 2020, and June 22, 2020, grievances put the IDOC and officials at Dixon on notice of the underlying problems Plaintiff was having with regard to inadequate medical treatment for his hand and the ARB resolved those grievances on November 6, 2020, prior to Plaintiff filing suit on February 11, 2021. Accordingly, Plaintiff exhausted his administrative remedies prior to filing suit, and Defendants' motion for summary judgment is denied.

13

**CONCLUSION**

For these reasons, the Court denies Defendants' motion for summary judgment [46]. Plaintiff's Motion to Dismiss Opposing Summary Judgment [64] is denied, under the understanding that the Court accepted it as Plaintiff's response to the motion for summary judgment and considered it in deciding the motion.

Dated:  August 15, 2022

Iain D. Johnston
U.S. District Court Judge